UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                CRIMINAL DOCKET

VERSUS                                                               No. 10-154

DAVID WARREN, ET AL                                         SECTION "I"


ORDER AND REASONS

Defendants, Dwayne Scheuermann ("Scheuermann") and Gregory McRae ("McRae"), move this Court to find that the superseding indictment improperly joins counts 3 and 4 with the superseding indictment's other counts. Defendant, Travis McCabe ("McCabe"), adopts such motion as his own. Because this Court finds that joinder is proper, that defendants have made an insufficient showing of prejudice, and that jury instructions will suffice to cure any potential prejudice that may arise during the course of the trial, the motion is **DENIED**.[1]

I.    BACKGROUND

This case concerns the alleged shooting and burning of Henry Glover in the immediate aftermath of Hurricane Katrina, the alleged obstruction into a federal investigation of those crimes, and the circumstances surrounding such events. The government's eleven-count superseding indictment charges five former and current New Orleans Police Department ("NOPD") officers in connection with these alleged crimes. The government has not alleged a conspiracy. Furthermore, no officer is charged in every count of the superseding indictment.

---

[1] David Warren, a codefendant in this case, filed a motion to sever on August 6, 2010. The government responded to such motion on August 13, 2010. During a September 1, 2010 status conference, the Court ordered Warren, and any other defendant who chose to do so, to brief the issue of whether counts 3 and 4 are properly joined with the superseding indictment's other counts by September 9, 2010. In response to such order, Scheuermann and McRae filed the motion currently under consideration. McCabe adopted such motion as his own.

1

As stated, Warren is charged in counts 1 and 2 of the superseding indictment.  Count 1 charges that Warren, while acting under color of law as an NOPD officer, shot Henry Glover on or about September 2, 2005 without legal justification, willfully depriving Glover of the right to be free from the use of unreasonable force by a law enforcement officer.   The government alleges that such crime involved the use of a dangerous weapon and an attempt to kill, resulting in bodily injury to, and the death of, Henry Glover.  Count 2 charges that, on or about September 2, 2005, Warren possessed, carried, and discharged a rifle during the commission of the civil rights offense charged in count 1 and that such discharge caused Henry Glover's death.  The government further alleges that Henry Glover's death involved circumstances constituting murder.

Scheuermann and McRae are charged in counts 3 through 7.  Count 3 alleges that on or about September 2, 2005, Scheuermann and McRae, while acting under color of law as NOPD officers, deprived EK and WT of the right to be free from the use of unreasonable force by law enforcement officers and caused bodily injury to EK and WT.

Count 4 alleges that on or about September 2, 2005, Scheuermann and McRae, while acting under color of law as NOPD officers, and while aiding and abetting one another, unreasonably seized WT's vehicle by burning it without legal justification, thereby depriving WT of the right to be free from an unreasonable search and seizure by law enforcement officers.  Count 4 further alleges that Scheuermann and McRae used fire and a dangerous weapon during the alleged offense.

Count 5 alleges that on or about September 2, 2005, Scheuermann and McRae, while acting under color of law as NOPD officers and without legal justification, while aiding and abetting one another, burned Henry Glover's body, depriving Henry Glover's family of their

rights to have access to the courts and to seek legal redress for a harm.  Count 5 also alleges that Scheuermann and McRae used fire and a dangerous weapon during the alleged offense.

Count 6 alleges that on or about September 2, 2005, Scheuermann and McRae aided and abetted one another in knowingly destroying evidence with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI").  Specifically, count 6 charges these defendants with burning a 2001 Chevrolet Malibu containing the body of Henry Glover with the intent to impede, obstruct, and influence the investigation of the September 2, 2005 shooting of Henry Glover by a NOPD officer.  Count 7 charges Scheuermann and McRae with aiding and abetting each other and using fire to commit the felonies alleged in counts 4, 5, and 6.

Count 8 charges both Robert Italiano ("Italiano") and McCabe.  Count 8 alleges that on or about December 2, 2005, Italiano and McCabe, in relation to and in contemplation of a matter within the jurisdiction of the FBI, aided and abetted one another in knowingly altering, concealing, covering up, falsifying, and making entries in documents with intent to impede, obstruct, and influence the investigation and proper administration of a matter within federal jurisdiction.  Specifically, count 8 charges that Scheuermann and McRae authored and submitted a false and misleading official report with the intent to impede, obstruct, and influence the investigation of the September 2, 2005 shooting and burning of Henry Glover.

Count 9 alleges that on or about April 21, 2009, Italiano knowingly and willfully made materially false statements and representations in a matter within the jurisdiction of the FBI when he told FBI agents investigating the shooting and burning of Henry Glover that: (1) no report was written after the shooting by Warren on September 2, 2005; (2) no missing persons reports were being generated after Hurricane Katrina; and (3) he was not aware of a connection

between the September 2, 2005 shooting by Warren and the burning of a car and body behind the Patterson Road levee.  Count 9 further alleges that when Italiano made such statements to the FBI, he knew that: (1) a report was written after the September 2, 2005 shooting by Warren; (2) a missing persons report was generated for Henry Glover; and (3) there was a connection between the Warren shooting and the burned car and body behind the Patterson Road levee.

Count 10 charges McCabe with knowingly and willfully making materially false statements and representations in a matter within the jurisdiction of the FBI when he told FBI agents investigating the shooting and burning of Henry Glover that: (1) he, in collaboration with Sergeant Purnella Simmons ("Sergeant Simmons"), wrote and typed the incident report that documented the September 2, 2005 shooting by Warren; (2) he interviewed Officer Linda Howard ("Officer Howard") with Sergeant Simmons before writing the incident report; and (3) the incident report submitted to the NOPD was true and accurate.  Count 10 further alleges that when McCabe made such statements to the FBI he knew that: (1) he did not write the incident report in collaboration with Sergeant Simmons; (2) he did not interview Officer Howard; and (3) the incident report submitted to the NOPD was false and inaccurate.

Count 11 charges that on or about July 31, 2009, McCabe knowingly made a material declaration under oath in a proceeding before a grand jury of the United States.  Specifically, count 11 alleges that McCabe testified falsely that: (1) he, in collaboration with Sergeant Simmons, wrote the incident report which documented the September 2, 2005 shooting by Warren; (2) he interviewed Officer Howard before writing the report; (3) he did not connect the Warren shooting to the burned car on the Patterson Road Levee until it appeared in the newspaper; and (4) the incident report submitted to the NOPD was true and accurate.  Count 11 further alleges that when McCabe made such statements he knew that: (1) he did not write an

4

incident report in collaboration with Sergeant Simmons; (2) he did not interview Officer Howard; (3) he had been aware, since 2005 (prior to any media reporting), that the Warren shooting and the burned car on the Patterson Road Levee were connected; and (4) the incident report submitted to the NOPD was false and inaccurate.

II.   JOINDER

Scheuermann, McRae, and McCabe move this Court to find that counts 3 and 4 of the superseding indictment are improperly joined with the superseding indictment's other counts. Federal Rule of Criminal Procedure 8(b) which governs joinder of defendants, states:

> The indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

"Rule 8(b) does not require . . . that each defendant have participated in the same act or acts" in order for joinder of defendants to be proper. United States v. Krenning, 93 F.3d 1257, 1266 (5th Cir. 1996) (citing United States v. Dennis, 645 F.2d 517, 520 (5th Cir. Unit B May 1981), abrogated in part by United States v. Lane, 474 U.S. 438 (1986)).  Instead, "All that is required is a series of acts unified by some substantial identity of facts or participants." Id. (internal quotation marks omitted).[2]

"Generally, the propriety of joinder under Rule 8 is to be judged from the allegations of the indictment, which for these purposes are assumed to be true." United States v. Whittington,

---

[2] As the United States Court of Appeals for the Tenth Circuit recently explained, "Ultimately, [t]he test for a proper joinder is a common thread to each of the defendants, which may be established by common evidence as to various counts." United States v. Caldwell, 560 F.3d 1202, 1212 (10th Cir. 2009) (alteration in original) (internal quotation marks and citation omitted).   The United States Court of Appeals for the Second Circuit applies "a 'commonsense rule' to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder." United States v. Rittweger, 524 F.3d 171, 177 (2nd Cir. 2008) (internal quotation marks and citation omitted).

269 Fed. App'x 388 (5th Cir. Mar. 10, 2008) (quoting United States v. Chagra, 754 F.2d 1186, 1188 (5th Cir. 1985)) (internal quotation marks omitted).  Nevertheless, the Fifth Circuit has acknowledged the power of district courts to look beyond the face of the indictment to determine whether joinder is proper.  See, e.g., United States v. Kaufman, 858 F.2d 994, 1003 ("Joinder of defendants is proper under Rule 8(b) where the record, examined broadly, presents two conspiracies substantially interrelated by their facts and participants rather than two separate and distinct conspiracies.")  More recently, the United States Court of Appeals for the Eleventh Circuit has held that, "[i]t is enough that when faced with a Rule 8 motion, the prosecutor proffers evidence which will show the connection between the charges." United States v. Dominguez, 226 F.3d 1235, 1241 (11th Cir. 2000).  Accordingly, joinder is improper only when "the indictment fails to show and the prosecutor fails to proffer a sufficient basis in the expected evidence to justify joinder."  Id.

"As a general rule, persons indicted together should be tried together . . . ." United States v. Valdez, 453 F.3d 252 (5th Cir. 2006) (internal quotation marks omitted).  "The government need not allege a conspiracy in order to join defendants . . . ."  Dennis, 645 F.2d at 520.  As the United States Supreme Court has explained, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together."  Zafiro v. United States, 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed 317 (1993).  "Joint trials play a vital role in the criminal justice system" by "promot[ing] efficiency" and "avoiding the scandal and inequity of inconsistent verdicts."  Id. (internal quotation marks and citation omitted).  Accordingly, "The prerequisites for joinder are liberally construed in favor of joinder."  United States v. Liveoak, 377 F.3d 859, 864 (8th Cir. 2004).

Scheuermann, McRae, and McCabe essentially argue that joinder of counts 3 and 4 is improper because:

> [t]he facts underlying Counts 3 and 4 are unrelated to the proof of facts necessary to establish the other alleged offenses. More specifically, the remaining counts deal with other allegations of police misconduct (i.e. killing of Henry Glover, obstruction of justice, false statement to FBI agents and false statements to the grand jury), having nothing to do with the facts and allegations set forth in Counts 3 and 4.[3]

This Court disagrees. As noted above, Rule 8(b) permits an indictment to "charge 2 or more defendants if they are alleged to have participated . . . in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "Rule 8(b) does not require . . . that each defendant have participated in the same act or acts" in order for joinder of defendants to be proper. Krenning, 93 F.3d at 1266. Instead, "All that is required is a series of acts unified by some substantial identity of facts or participants." Id.

The superseding indictment and the evidence previewed by the government[4] establish that Warren's alleged shooting of Henry Glover, the alleged beating of EK and WT, the alleged burning of a car containing Henry Glover's body by Scheuermann and McRae, the alleged obstruction of the investigation into Henry Glover's shooting, and the alleged false statements made in connection with such investigation share many of the same facts and participants and will require resort to much of the same evidence and many of the same witnesses. According to the government, "[t]he shooting of Henry Glover and the burning of his body involved the same victim, took place within a few hours on the same day, and at locations that are only a short

---

[3] R. Doc. No. 173-1, pgs. 3-4.
[4] R. Doc. No. 185, pgs. 3-5.

distance apart."[5] The government further asserts that many of the witnesses to the shooting, beating, burning, and false report are the same.[6]

Given that many of the charges alleged in the superseding indictment and the evidence previewed by the government bear on the shooting of Henry Glover, Warren's alleged involvement in connection with such shooting, and the circumstances leading up to the burning of Henry Glover's body, this Court finds that a substantial identity of facts exists among the superseding indictment's charges. See id. Accordingly, because the Court finds that the crimes alleged against the defendants in the superseding indictment are sufficiently related to one another by some "substantial identity of facts or participants," joinder is proper. Krenning, 93 F.3d at 1266.

Although defendants cite a number of circuit court cases to support their basic argument that joinder is improper, they fail to advise the Court how the cited cases apply to the facts of this case. The Court, in turn, finds the cited cases distinguishable.

For example, defendants cite United States v. Gentile, 514 F.2d 1244 (5th Cir. 1975) for the proposition that "joinder is proper only if the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense."[7] In Gentile, Gentile and Marquart were both charged in a three-count indictment. Counts 1 and 2 charged both men with conspiring to distribute PCP and actually distributing such drug on October 23, 1972. Id. at 629. Count 3, however, charged Marquart, alone, with distribution of LSD on November 11, 1972. Id. Before trial, Gentile moved the court to find that Marquart's joinder under count 3 was improper. Id. at 630.

---

[5] R. Doc. No. 129, pgs. 3-4.
[6] R. Doc. Nos. 129 & 185.
[7] R. Doc. No. 173-1, pg. 2.

Reversing the district court's refusal to sever count 3, the Fifth Circuit held that joinder was improper because "the criminal activity charged against Marquart in Count 3 of the indictment was not part of a 'series of acts or transactions' under 8(b)." Id. While first stating that "acts cannot be properly joined in a multiple defendant trial if different facts and circumstances must be established to support the alleged violations," the Fifth Circuit observed that, "[t]he proof required to establish the sale of PCP on October 23, as alleged in Count 2, is entirely different from the proof required to establish the sale of LSD on November 11, as alleged in Count 3." Id. As the Fifth Circuit explained, "[t]he two transactions occurred almost three weeks apart, the sales took place at different locations, the transactions involved different drugs, and the sources from whom Marquart procured the drugs were different." Id. at 630-31.

Gentile is distinguishable because, in that case, the government charged two defendants together in some counts, but then charged only one of the defendants in another count with a factually unrelated crime. Id. In contrast, the superseding indictment in this case does not simply join defendants accused of unrelated crimes that can only be proved by resorting to entirely "different facts and circumstances." Id.

Indeed, as the government correctly notes in its brief, "[m]any of the facts that must be established against Warren must also be used against other defendants and vice versa."[8] For example, to prove count 2's allegation that Warren's unjustified shooting resulted in Henry Glover's death, "the government must show the chain of events from the point of the shooting through the burning of his body to the ultimate identification of his remains through DNA

---

[8] R. Doc. No. 129, pg. 4.

9

analysis."[9] The superseding indictment and the evidence previewed by the government place the crimes alleged against Scheuermann and McRae squarely within this chain of events.

The government asserts, as previously mentioned, that "[e]ach of these events – the shooting, beating and burning – took place on the same day within a two hour period of time and at locations which were only a few miles apart."[10] Furthermore, the government recognizes that "[e]ven if Count 3 were severed" it would still be necessary for the government "to present evidence of the . . . treatment [of EK and WT by Scheuermann and McRae] in order to provide context for the subsequent actions of McRae and Scheuermann."[11] The government also asserts that "in order to establish the obstruction counts referenced in Counts 6 and 8, the government will need to establish the defendants' knowledge of the conduct that is charged in Counts[ ]1, 2, 4, 5, and 7."[12] Additionally, according to the government, in order to establish that McCabe made false statements regarding Henry Glover's shooting and burning, the government must demonstrate to the jury the true circumstances surrounding Henry Glover's shooting and subsequent burning. Accordingly, the Court finds that joinder is proper.

Defendants also cite United States v. Satterfield, 548 F.2d 1341 (9th Cir. 1977), in which the government charged two men, Merriweather and Satterfield, together in a ten-count indictment relating to five Oregon bank robberies. Id. at 1343. The indictment charged that "Merriweather alone had perpetrated the first, second, and fifth robberies, and that Merriweather and appellant Satterfield together had committed the third and the fourth [robberies]." Id. Furthermore, "it was never alleged that Satterfield was involved in the first, second, and fifth

---

[9] Id.
[10] R. Doc. No. 185, pg. 4.
[11] Id. at 6-7. The jury will also need to evaluate the credibility of EK and WT. In order to do so, testimony relating to their treatment will be necessary so that the jury can evaluate their testimony with an understanding of the circumstances which may color their individual perspectives.
[12] R. Doc. No. 185, pg. 7.

robberies, whether as a participant in a common plan or in any other manner." Id. (emphasis added).  The United States Court of Appeals for the Ninth Circuit held that joinder was improper.

Noting the fact-specific nature of the joinder inquiry, the court explained that, "[s]ince a nexus between each offense charged in the indictment was absent, we cannot say, on these facts, that the five robberies arose out of the same series of acts or transactions." Id. at 1345.  Indeed, "Joinder of Satterfield [could not] be justified merely because the robberies which Merriweather perpetrated alone were somewhat similar in character to the robberies in which both defendants participated." Id.  Although the Ninth Circuit determined that "a mere showing that the events occurred at about the same time, or that the acts violated the same statutes, is not enough" to establish a "series of acts or transactions" under Rule 8(b), the court nevertheless stated that "[o]ther logical relationships might also be sufficient to establish that a group of offenses constitutes a 'series of acts or transactions.'" Id. at 1344.

As noted above, the superseding indictment and the evidence previewed by the government[13] establish a "logical relationship" between Warren's alleged shooting of Henry Glover, the alleged beating of EK and WT, the alleged burning of a car containing Henry Glover's body by Scheuermann and McRae, the alleged obstruction of the investigation into Henry Glover's shooting and burning, and the alleged false statements made in connection with such investigation.  See id.  Joinder is proper given the logical relationship between the facts currently under consideration.  Accordingly, joinder of counts 3 and 4 is proper.

III.    SEVERANCE

---

[13] R. Doc. No. 185, pgs. 3-5.

11

Defendants assert that this Court should sever counts 3 and 4 of the superseding indictment from the superseding indictment's other counts. Federal Rule of Criminal Procedure 14(a) states:

> If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant or the government the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

As the Fifth Circuit has held, "If defendants have been properly joined, the district court should grant a severance only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable determination of guilt or innocence." United States v. Bermea, 30 F.3d 1539, 1572 (5th Cir. 1997) (citing Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993)). Indeed, "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." Zafiro, U.S. 534 at 541. Furthermore, concerns of judicial economy can outweigh the prejudice a defendant suffers when properly joined with codefendants. See United States v. Ellender, 947 F.2d 748, 754 (5th Cir. 1991).

Defendants offer no argument as to how or why they will be prejudiced by the joinder of counts 3 and 4 in this case. Accordingly, **IT IS ORDERED** that defendants' motion[14] is **DENIED**.

New Orleans, Louisiana, September 27th 2010.

                                              **LANCE M. AFRICK**
                                    **UNITED STATES DISTRICT JUDGE**

---

[14] R. Doc. No. 173.